T.C. Summary Opinion 2001-64

UNITED STATES TAX COURT

TERRY O'NEAL STYRON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13311-99S.                          Filed May 2, 2001.

Terry O'Neal Styron, pro se.

<u>Horace Crump</u>, for respondent.


COUVILLION, <u>Special Trial Judge</u>:  This case was heard
pursuant to section 7463 in effect when the petition was filed.[1]
The decision to be entered is not reviewable by any other court,
and this opinion should not be cited as authority.

---

[1]    Unless otherwise indicated, section references
hereafter are to the Internal Revenue Code in effect for the year
at issue.  All Rule references are to the Tax Court Rules of
Practice and Procedure.

Respondent determined a deficiency of $10,226 in petitioner's 1994 Federal income tax.

The sole issue for decision is whether petitioner, under section 170(a), is entitled to an itemized deduction of $55,000 for a charitable contribution resulting from the bargain sale of a boat to a qualified tax-exempt organization in lieu of $22,960 allowed by respondent in the notice of deficiency.

Some of the facts were stipulated. Those facts and the accompanying exhibits are so found and are incorporated herein by reference. Petitioner's legal residence at the time the petition was filed was Wetumpka, Alabama.

Petitioner is a franchised automobile dealer engaged in the sale of new and used motor vehicles. At the time of trial, petitioner had been engaged in this business 30 years. Petitioner held a Chevrolet and Oldsmobile franchise and another franchise for Chrysler, Plymouth, Jeep, and Dodge vehicles. This latter franchise was located at Troy, Alabama.

On March 1, 1991, petitioner purchased at public auction a pleasure boat for $53,500.[2] The boat was a 1989 model Sea Ray

_____

[2] There is a conflict in the evidence as to the date petitioner purchased the boat. The written stipulation and petitioner's tax return for 1994 state the date of purchase was March 1, 1991; however, at trial, petitioner testified he purchased the boat in December 1991. The difference in dates is not material to deciding the issue. In addition, there is a conflict in the evidence as to the amount petitioner paid for the
(continued...)

Sundancer with twin 270 horsepower Mercruiser gasoline engines. The auction was a foreclosure sale instituted by General Motors Acceptance Corp. (GMAC), a mortgage creditor. Petitioner was familiar with the boat, as it had been docked next to another boat owned by him. In the few months prior to the auction sale, petitioner looked after the boat for GMAC. After the purchase, petitioner added certain components to the boat. The boat was recreational and was not used in petitioner's trade or business. During 1994, petitioner had the boat towed to Daytona, Florida, for his personal use in that area. While he was using the boat at Key West, Florida, petitioner met two individuals, identified by petitioner as marine surveyors, who were affiliated with an organization known as Institute of Marine Services (IMS) of Lauderdale-By-The-Sea, Florida. These individuals, after explaining the work of IMS, requested that petitioner consider donating the boat to IMS, and, since IMS was a tax-exempt organization under section 170(c), petitioner would be entitled to an itemized charitable contribution deduction for Federal income tax purposes for the value of the boat. Petitioner was interested but felt that the income taxes he would save by way of the charitable contribution would not totally compensate him for

[2](...continued)
boat. In the written stipulation, the parties agreed the purchase price was $53,500; however, at trial, petitioner testified he paid $53,000 for the boat.

his investment in the boat. He consulted with a firm of certified public accountants (C.P.A.'s), and the C.P.A. firm advised petitioner that, based on an $80,000 valuation for the boat, petitioner should receive at least $25,000 in a bargain sale to IMS, which, combined with the income tax savings from the charitable contribution deduction, would realize for petitioner an amount in cash and tax savings that would come reasonably close to petitioner's investment. IMS, accordingly, agreed to purchase the boat from petitioner for $25,000. IMS engaged the services of a boat appraiser (whose $300 fee was paid by petitioner), and the appraiser prepared a written appraisal report, dated December 21, 1994, in which he valued the boat at $80,000. Petitioner sold the boat to IMS on December 30, 1994, for $25,000. Shortly thereafter, on January 27, 1995, IMS sold the boat to Waters Edge Marine of Dania, Florida, for $35,000.

Petitioner divided the transaction into two parts on his 1994 Federal income tax return. He reported the bargain sale aspect of the transaction as the sale of an asset on Schedule D, Capital Gains and Losses. He reported the selling price received of $25,000, a basis of $16,563, resulting in a long-term capital gain of $8,437.[3] Then, on Schedule A, Itemized Deductions,

---

[3] Since the $25,000 selling price represented 31.25 percent of the $80,000 value for the boat, that percentage figure applied to a cost price of $53,000 results in the rounded amount
(continued...)

petitioner claimed a charitable contribution deduction of $55,000 ($80,000 fair market value less $25,000 received in the sale).

In the notice of deficiency, respondent determined that, as of December 31, 1994, the boat had a fair market value of $47,960 and, accordingly, adjusted the capital gains aspect of the transaction as well as the charitable contribution deduction as reported by petitioner.  Since the $25,000 in cash received by petitioner in the bargain sale represented 52.127 percent of the boat's $47,960 value, that percentage applied to petitioner's cost of $53,500 amounted to a basis of $27,887.94.  Since petitioner received $25,000 in the bargain sale, petitioner sustained a loss.  Respondent, therefore, eliminated the $8,437 long-term capital gain reported by petitioner but did not allow the loss as a deduction because the loss arose from the sale of a personal asset.  After deducting the $25,000 received by petitioner from the $47,960 value for the boat, respondent determined that petitioner's charitable contribution deduction was $22,960.

Respondent's determination of the $47,960 value was based on a joint appraisal by respondent's valuation engineer and a

---

[3](...continued)
of $16,563, the amount claimed as basis on petitioner's return. If, however, petitioner's cost was $53,500, as stipulated by the parties, the correct amount for the basis on Schedule D should be $16,719 (rounded).

private marine survey firm, Todd & Associates, Inc., dated April 14, 1999. They valued the boat as of December 31, 1994. The appraisal relies on two "blue books", the BUC Used Boat Price Guide (BUC), and the N.A.D.A. Large Boat Appraisal Guide (NADA). Under the BUC, the value of a boat manufactured in 1989 (as was the case here), would range between $34,700 and $38,600; whereas, under the NADA, for the same boat, its value would range between $38,350 and $52,500. Respondent's appraisers concluded that the boat had a fair market value of $47,960 as of December 31, 1994. The appraisal report noted the fact that IMS had sold the boat during January 1995 for $35,000, but the appraisers considered other additional factors in arriving at their $47,960 conclusion.

Section 170(a)(1) allows a deduction for any charitable contribution to or for the use of an organization described in section 170(c), payment of which is made during the taxable year. Respondent agrees that the donee in this case, IMS, was a qualified organization under section 170(c). In general, the amount of a charitable contribution made in property other than money is the fair market value of the property at the time of the contribution. Sec. 1.170A-1(c)(1), Income Tax Regs. Fair market value is "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell, and both having reasonable knowledge of relevant facts." Sec. 1.170A-1(c)(2), Income Tax

Regs.; <u>United States v. Cartwright</u>, 411 U.S. 546, 550-551 (1973); <u>Johnson v. Commissioner</u>, 85 T.C. 469 (1985). Fair market value is a question of fact to be determined from an examination of the entire record. See <u>Lio v. Commissioner</u>, 85 T.C. 56, 66 (1985), affd. sub nom. <u>Orth v. Commissioner</u>, 813 F.2d 837 (7th Cir. 1987). Fair market value is a question of judgment rather than mathematics. See <u>Hamm v. Commissioner</u>, 325 F.2d 934, 940 (8th Cir. 1963), affg. T.C. Memo. 1961-347. Valuation is an approximation derived from all the evidence. See <u>Helvering v. Safe Deposit & Trust Co.</u>, 316 U.S. 56, 66-67 (1942).

No one from IMS or any of the appraisers testified at trial. Petitioner presented no evidence to refute the conclusions of respondent's appraisers or to show why the $80,000 value determined by his appraiser grossly exceeded the $47,960 value determined through two reputable "blue book" guides. Weighing heavily against petitioner's $80,000 valuation claim is the sale of the boat for $35,000 by IMS less than 1 month after IMS acquired it from him. On this record, the Court is satisfied that the boat did not have a value in excess of $47,960 on the date of the bargain sale on December 30, 1994. Respondent, therefore, is sustained.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

for respondent.[4]

---

[4] As noted <u>supra</u> note 3, there is a difference in the evidence as to whether petitioner paid $53,500 or $53,000 for the boat. Under either figure, petitioner sustained a loss, and, since the loss is not deductible because it was realized from the sale of a personal asset, the Court's disposition of the principal issue alleviates the need for a finding of the amount petitioner paid for the boat and a Rule 155 computation.